HAMILTON STEWART, trading as STEWART AND DONOHUE, defendant below, plaintiff in error, *vs.* MONAD ENGINEERING COMPANY, plaintiff below, defendant in error.

1. CONTRACTS—FRAUD—EVIDENCE.

Fraud, as a defense to an action on a contract, will not be presumed.

2. SALES—FRAUD—QUESTION OF LAW—SALES.

The existence of actual fraud is a question of fact; but what constitutes such fraud as will vitiate a contract for a sale of personal property is a question of law for the court.

3. SALES—CONTRACT—VALIDITY—FRAUD.

That the buyer of stone falsely states that it is not to be used on a particular job, for which the seller has bid unsuccessfully is not such fraud as will entitle the seller to refuse to perform, though the seller would not have made the contract if he had known for what purpose the stone was purchased.

4. SALES—BREACH OF CONTRACT—EVIDENCE.

In an action for the seller's failure to perform his contract, where his defense was that the buyer misrepresented its financial standing, evidence *held* to show that the buyer paid its debts and was in good credit.

(*June* 18, 1912.)

CURTIS, Chancellor, PENNEWILL, C. J., and Associate Judges
CONRAD, WOOLLEY and RICE sitting.

*Ward, Gray* and *Neary* for defendant below, plaintiff in error.

*William S. Hilles* for plaintiff below, defendant in error.

Supreme Court, June Term, 1912.

WRIT OF ERROR (No. 1, June Term, 1911) to the Superior
Court for New Castle County. Action of assumpsit brought by
the Monad Engineering Company against Stewart and Donohue to
recover damages for failure to perform a written contract. Judg-
ment for plaintiff. (See 2 *Boyce* 35, 78 *Atl.* 598). Affirmed.

## STATEMENT OF FACTS.

This was an action of assumpsit brought by the Monad
Engineering Company against Stewart and Donohue to recover
damages for their failure to perform a written contract entered
into with the Monad Engineering Company, the terms of which
contract are set out in a letter, a copy of which is as follows:

"Wilmington, Del.,
Dec. 13, 1907.

The Monad Engineering Co.,
147 Cedar St.,
New York, N. Y.

. Gentlemen:—

Confirming prices given your Mr. A. T. Prescott on rip-
rap would say that we will furnish and deliver in car load
lots f. o. b. cars B St. wharf, Wilmington, Del., in pieces
ranging in weight from 150 to 250 lbs.,each for the sum of
One Dollar ($1.00) per ton of 2,000 lbs. subject to Railroad
weights, delivery to be made as follows: three cars per day,
subject to the weather. Terms, 30 days after delivery.

Yours truly,
Stewart and Donohue.

Accepted Dec. 13, 1907.
    Monad Engineering Co.
        Prescott.
1,000 tons, more or less required."

Prescott, who accepted the offer on behalf of the Monad Engineering Company, testified that he had authority to accept the same.

The Monad Engineering Company was engaged in constructing the foundation of a lighthouse at the Elbow Cross Ledge in the Delaware Bay under contract with the United States Government. Before actually commencing the work on the contract, it awarded a contract to Joseph H. Ward's Sons of the Crum Creek Quarries, Pa., for riprap of the same character and specifications. Stewart claimed that he was induced to enter into the contract by fraudulent misrepresentations, and that on the same day he dictated a letter to Prescott, in which he stated that "We have looked into the financial end of the Monad Engineering Company, and find that your Company is rather dilatory in paying bills, especially within the last year, therefore we will be justified in not living up to the terms of our letter of this P. M. unless you can give us good securities. Your order for one thousand tons has been canceled until we hear from you further." On December fifteenth plaintiffs notified Stewart of their readiness to accept the stone, and that on his failure to comply with his contract, they would be compelled to get it elsewhere; and on the thirty-first of December notified Stewart that they were purchasing the stone on his account.

The fraud practiced upon the defendant, according to his contention, consists of two things: (1) That he was deceived as to the purpose for which the Monad Engineering Company desired to use the stone; and (2) that Prescott stated to him that they had paid their bills for all material received by them on the present job within thirty days, and that the credit of the Monad Engineering Company was A No. 1.

As to the first ground of fraud Stewart testified that he asked Prescott, "Is this the same job that I bid on in the month of

June? Oh, no, he says, it is another job. The specifications are practically the same. I said if it was, I would give him no figure. I would not furnish him a pound of stone. He satisfied me that it was not for the same job."

As to the second ground of fraud Stewart testified "We then went into the question of his financial standing. I asked him what was his Company's standing in the financial world, and he said it was A No. 1; that they paid all their bills in thirty days. I said, have you paid your bills for all materials received by you on the present job to within thirty days? He says, we have."

"Q. If he had not satisfied you that his credit was good, and that he had paid his bills to within thirty days, you would not have given him any credit? A. Not for a pound. Q. And you would not have made the contract? A. I would not. Q. You say he satisfied you as to his credit? A. Yes, sir."

To establish the fact that they did not pay their bills within thirty days after delivery, one witness was called by the defendant. This witness had a contract to deliver stone to the Monad Engineering Company for the Cross Ledge Light work. He testified that on December 13, 1907, there had been no payment for stone delivered, and that his first delivery was made on August 16, 1907. He didn't think there were any terms of payment in his contract. On cross examination he was asked whether his contract was not that he was to be paid on the twenty-fifth of the next succeeding month after the rendering of his bill, to which his answer was: "Possibly it was. I don't remember." When he was further asked whether there was any overdue account from the Monad Engineering Company to him on the thirteenth of December, 1907, his reply was: "I don't say that it was an overdue account. I said that I had not received any money on the thirteenth of December." Again when asked about the same matter as to whether there was an overdue account on the thirteenth of December, 1907, from the Monad Engineering Company, his reply was: "I don't think I did say that."

There was evidence by Ward to the effect that he was not paid in full, and had disputes about the final payment of his account.

26 Del.]  Stewart & Donohue vs. M. Engineering Co.    169

Argument.

Argument of Counsel for Plaintiff in Error.

In the consideration of the effect of fraudulent representations of collateral matters as inducements to the contract, the law is usually stated that the collateral matter must appear from the circumstances of the case to be material to the contract in its direct sense, or be such as has been made by the parties an essential preliminary to the making of the contract in question.

Admitting that the right of disposal is an incident to the ownership of property, it follows that Stewart, in this case, had the absolute right, if he considered it good business policy, to refuse to sell stone to a purchaser who was at that time under contract to purchase stone from another quarry for the same work. *Brett v. Cooney*, 75 *Conn.* 338, 53 *Atl.* 729, 1124.

The better rule for deciding whether fraud be material or not is this: If the fraud be such that had it not been practiced the contract would not have been made, or the transaction completed, then it is material to the contract. *2 Pars. on Cont.* 937; *Higbee v. Trumbauer*, 112 *Iowa* 74, 83 *N. W.* 812; *Brown v. Search*, 131 *Wis.* 109, 111 *N. W.* 210.

"It may often be difficult to say when a representation is material, but it is probably safe to say that it is always material if had it been known to be false the contract would not have been entered into." *Clark on Contracts*, 226; 1 *Page on Cont.* 208; *McAleer v. Horsey*, 35 *Md.* 439; *Powers v. Fowler*, 157 *Mass.* 318, 32 *N. E.* 166; *Holst. v. Stewart*, 161 *Mass.* 516, 37 *N. E.* 755, 42 *Am. St. Rep.* 442.

"The misrepresentations must be material, that is it must have been an inducement to the contract; otherwise it will not be a ground for avoiding it." 9 *Cyc.* 424; *Taylor v. Scoville*, 3 *Hun.* (*N. Y.*) 301; *Stewart v. Lester*, 49 *Hun*, 60, 1 *N. Y. Supp.* 699; *Smith v. Countryman*, 30 *N. Y.* 670; *Pulsford v. Richards*, 17 *Beaver*, 87, at 96; 17 *Jur.* 865; 22 *L. J. Ch.* 559; 1 *Weekly Rep.* 295; *Stone & Wellington v. Robie*, 66 *Vt.* 245, 29 *Atl.* 257.

A careful examination of the authorities will disclose, beyond question, that the misrepresentation of the fact known to the person making it to be untrue amounts to a fraud in law, if the

representation be expressly intended to induce a person to act upon it. *Kent County R. R. Co. v. Wilson,* 5 *Houst.* 50; *Richardson v. Horn,* 8 *Houst.* 26, 31 *Atl.* 896.

While in an action for deceit all the elements of fraud, including injury, must be present, where fraud is urged as a defense to an action on contract, the element of damage is not necessary to justify rescission.

The argument of the court below is to the effect that inasmuch as it does not appear that Stewart would have suffered an injury by reason of the statements made, one of the essentials in the proof of fraud is wanting, and therefore the case of fraud is not made. That this is error, the authorities recognize the very important distinction between fraud as a ground for an action of deceit and as the ground for rescission in a defense to an action on contract. *Taylor v. Scoville,* 3 *Hun. (N. Y.)* 301; *Stewart v. Lester,* 49 *Hun.* 63, 1 *N. Y. Supp.* 699; *Higbee v. Trumbauer,* 112 *Iowa,* 74, 83 *N. Y.* 812; *McLaren v. Cochran,* 44 *Minn.* 255, 46 *N. W.* 408; *Williams v. Kerr,* 152 *Pa.* 560, 25 *Atl.* 618; *Fox v. Tabel,* 66 *Conn.* 397, 34 *Atl.* 101; *Cruess v. Fessler,* 39 *Cal.* 336; *Baker v. Maxwell,* 99 *Ala.* 558, 14 *South.* 468; *Harlow v. La Brum,* 151 *N. Y.* 278, 45 *N. E.* 859; *Short v. Cure,* 100 *Mich.* 418, 59 *N. W.* 173.

That the court below erred in considering the element of injury essential in this case must clearly appear from an examination of all of the authorities.

It was without the province of the court in this case to pass upon the materiality of the statements and the defense of fraud should not have been taken from the jury.

The court below erred in refusing to instruct the jury that if a purchaser makes false representations to pay, or as to his property or credit, the contract is vitiated.

(A statement as to assets and debts of a business is a material fact): *Nevada Bank v. National Bank, (C. C.)* 59 *Fed.* 338; *Mayberry v. Rogers,* 81 *Ill. App.* 581; *Garrison v. Electric Works,* 55 *N. J. Eq.* 708, 37 *Atl.* 741; *Townsend v. Felthousen,* 156 *N. Y.* 618, 51 *N. E.* 279; *Gainesville Nat. Bk. v. Bamberger,* 77 *Tex.* 48, 13 *S. W.* 959, 19 *Am. St. Rep.* 738; *Hume v. Steele (Tex.)* 59 *S. W.*

812; (False statements as to his debts and means, made by a purchaser to induce credit, are fraudulent): *Johnson v. Peck*, 1 *Wood B. & M.* 334; (False statements made to procure credit that a purchaser is solvent and able to pay his debts are fraudulent): *Ensign v. Hoffield & Geisaler (Pa.)* 4 *Atl.* 189. (A man's statement, to obtain credit, that he is "doing a safe business" and that his note is sure to be paid, if false, constitutes fraud): *Thompson v. Rose*, 16 *Conn.* 71, 41 *Am. Dec.* 121; (A false statement that a purchasing corporation was out of debt and had unincumbered property of a stated value was also held fraudulent): *McClellan v. Scott*, 24 *Wis.* 81; (A false statement of a specific fact as to the capital of a firm, made by one member in order to obtain credit is fraudulent although he expected that payment would be made and the vendor suffer no loss): *Judd v. Weber*, 55 *Conn.* 267, 11 *Atl.* 40. (A statement by a purchaser of that part only of his indebtedness which is connected with the business for which a purchase is made, without including his other indebtedness, is fraudulent when made in reply to an inquiry by his vendor as to his financial condition): *Collins v. Coolley (N. J. Ch.)*, 14 *Atl.* 574. (It is clear that if the purchaser makes false representations as to his ability to pay, the sale is void and no title passes): 2 *Parsons on Contracts*, (9th Ed.) p. 940.

The court below erred in refusing to instruct the jury that "It is not necessary that the false representation should be the only inducement. There may be other inducements co-operating. It is sufficient that such false representations were so material that the purchase would not have been made in their absence. If to that extent they operated as inducements to the contract, the contract would be void, however many other inducements there may have been." *Matthews v. Bliss*, 22 *Pick. (Mass.)* 48; *Saunders v. McClintock*, 46 *Mo. App.* 216; *McAleer v. McMurray*, 58 *Pa.* 126.

ARGUMENT OF COUNSEL FOR DEFENDANT IN ERROR.

The weight of authority, as well as the decisions in Delaware, clearly establish the proposition, at least so far as this state is

concerned, that the same matters necessary to show legal fraud must be proved which would be necessary to maintain an action for damages for deceit.   *Freeman v. Topkis*, 1 *Marvel* 174, 40 *Atl.* 948;  *Isaacs v. Messick*, 1 *Marvel* 259, 40 *Atl.* 1109;  *Reznor v. Maclary*, 4 *Houst.* 241, 254;  *King v. Eagle Mills*, 10 *Allen (Mass.)* 548, 551;  *Weldin v. Decou*, 18 *Minn.* 470  (*Gil.* 421);  2 *Parsons on Contracts, p.* 769.

For the reason that while the cases and text-books have frequently declined to attempt an all-embracing definition of what constitutes legal fraud, it is certainly the law of this state, and so far as a careful examination has disclosed of all of the other states, that one essential element of actual fraud, founded upon a false statement of facts, is that such statement must relate to something material and substantial.   *Reznor v. Maclary*, 4 *Houst.* 241, 254; 2 *Parsons on Contracts, p.* 769;  *Kent County R. R. Co. v. Wilson*, 5 *Houst.* 56;  *Pearce v. Carter*, 3 *Houst.* 385, 389.

The only material and substantial relation which the alleged misrepresentations could have had were in so far as they affected the probability of Stewart and Donohue being paid promptly for the goods sold, that is to the credit and financial responsibility of the Monad Engineering Company.   Any other relation to this contract must be purely immaterial and have no substance of any kind whatsoever.

Many cases lay down the proposition that what is known as injury is essential to the existence of legal fraud, and it is respectfully submitted that this rule is without exception in the adjudged cases.   No one would contend that if the Monad Engineering Company had represented itself to be solvent and had procured this contract on the faith of its being solvent, and it should turn out that it was insolvent at the time, that Stewart would not be justified in immediately rescinding it.   In such case, he would have sustained no damage or injury, but the probability, if not the certainty of injury existed, and the court will not determine whether such injury would or would not have happened in the course of events.   It is enough for him to show that he might have been injured, and it is in this sense that it is believed that all of the cases hold that either actual injury or possible injury may

exist, and that they can all be reconciled upon this theory. See *Smith on Fraud*, § 126; 1 *Story's Eq. Jur.* § 187; 2 *Parsons on Contracts*, 769; *Pomeroy's Eq. Jur.* 898; 20 *Cyc.* 8; *Whitesides v. Taylor*, 105 *Ill.* 496; *Sieveking v. Litzler*, 31 *Ind.* 13; *Chamberlain v. Coal Co.*, 92 *Tenn.* 13, 20 *S. W.* 345.

It being plain that a false representation of financial standing or credit will enable one to rescind the contract where there has been no actual injury, it is equally plain that if this stone had been purchased upon the statement of the Engineering Company that its secretary was abroad, or had a sprained leg, that the contract could not be rescinded.

Fraud is never presumed to exist. *Mears v. Waples*, 3 *Houst.* 619; *Freeman v. Topkis*, 1 *Marvel* 174, 179, 40 *Atl.* 948.

It is submitted that where the court gives the defendant the benefit of every inference that could have been fairly drawn from the evidence, and such was insufficient to authorize a verdict in his favor, a peremptory instruction for the plaintiff on the non-existence of legal fraud, such as would authorize him to rescind his contract, was proper. *Marshall v. Hubbard*, 117 *U. S.* 415, 6 *Sup. Ct.* 806, 29 *L. Ed.* 919; *Bigelow on Fraud*, *pp.* 139, 140; *Wise v. Topkis*, 1 *Marvel* 174, 40 *Atl.* 948.

Whether a witness may testify as to conversations had with a third person where the truth or falsity of such statement is a material matter, falls clearly within the doctrine which excludes hearsay testimony. 1 *Greenleaf on Evidence*, § 101.

CONRAD, J., delivering the opinion of the court:

The one question presented in this case by the assignments of error is whether the court below was justified in instructing the jury that there was no such evidence of fraud in the case as would warrant the defendant below in rescinding his contract of sale.

In *Freeman v. Topkis*, 1 *Marvel* 178, 40 *Atl.* 949, Chief Justice Lore states the law as follows: "What constitutes fraud is a question for the court, whether the fraud was actually committed is a question of fact for the jury."

[1, 2] When fraud is set up as a defense, the fraud must be proved, and is not presumed, or to be established by slight proof

or trivial circumstances. Actual fraud is always a matter of fact, and must be proved and established as such in any case, but what will constitute an actual fraud as will vitiate and avoid a contract of this kind, is a question of law, and it is therefore the province of the court to say and instruct the jury whether the evidence was sufficient for that purpose.

In *Pearce v. Carter*, 3 *Houst.* 385, Chief Justice Gilpin very aptly suggests that it is not every false representation, even when made with a full knowledge of its falsity, that will amount, in judgment of law, to such a fraud as will invalidate a contract and deprive a party of his right to enforce it, and Chancellor Bates in *Reznor v. Maclary*, 4 *Houst.* 254, lays down the general principles of law governing contracts that are attacked on the grounds of fraud or misrepresentation in the following language: "In order to avoid a transaction on account of them (misrepresentations) three things are requisite—1st, the misrepresentations must relate to something material and substantial; 2d, the transaction sought to be avoided must appear to have been induced by it. The party aggrieved must have been actually misled by it; and 3rd, his confidence must have been a reasonable one. Except in these cases, even betrayed confidence is not a ground of relief."

In the case before us the negotiations between the parties seem to have been open and fair. The defendant below and the authorized agent of plaintiff company came together personally and after a conference that necessarily occupied a considerable period of time, agreed upon a sale of one thousand tons of stone. The questions asked by defendant as to the use that was to be made of the stone, and as to the financial standing and responsibility of plaintiff company, seem to have been promptly and satisfactorily answered so that before the conference ended, a proposition as to price, etc., was made in writing by defendant and accepted at once by the agent of plaintiff company. No elements of concealment or unfairness are shown in the negotiations, they appear to have been open and aboveboard.

The defendant below defends his breach of the contract on three grounds,—that false statements were made by plaintiff

26 Del.]  Stewart & Donohue vs. M. Engineering Co.    175

Opinion.

company, first, as to where the stones were to be used; second, as to the credit of plaintiff company, and, third, as to certain work being paid for that had been done theretofore for plaintiff company by another party.

[3]  As regards the first contention, there is some conflict in the testimony as to whether representations were made that the stone bought by plaintiff company from defendant was to be used on the contract at Cross Ledge Light on which defendant was an unsuccessful bidder some months previous.  Defendant in his testimony states very positively that he was not willing to furnish stone for that particular job, and he objected to so doing on the ground that to do so would violate a business principle, or policy, which he had established for himself, viz., not to furnish stone for any work to a principal contractor in cases where he, the vendor, had theretofore bid unsuccessfully in competition to supply stone to such principal contractor for the same work.  It did not appear to the court below nor does it appear to this court that there was any element of fraud or misrepresentation in any statement made regarding the use of the stone that was vital or material to the contract in this case.

[4]  The defendant evidently relied upon the second and third contentions but as regards both he signally failed to establish fraud of a material or substantial nature.  No evidence was adduced that in the least undermined the credit of plaintiff company or that tended to show financial weakness; on the contrary plaintiff company showed by affirmative testimony that it paid its debts and was in good credit.

The evidence as to payments made on the Cross Ledge contract was not entirely clear but the fact was established that full settlement had been made for all work for which bills had been rendered up to the time of the making of the contract now in dispute, so the evidence on the third point likewise failed in establishing material and substantial fraud such as would avoid the contract.

These facts appearing from a careful reading of the testimony; and the law as laid down by the court below being in accord with previous decisions of the courts of this state, we find no error

Judgment Affirmed.

in the rulings or charge of the court below and so order that the Judgment below be affirmed.